# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

No. 16-3118

---

MERYL SQUIRES-CANNON,
*Plaintiff-Appellant,*

v.

DENNIS WHITE, ERIC HILDEBRANDT, PATRICK DWYER, CHRISTOPHER CARMICHAEL,
HOLLAND & KNIGHT LLP, THE FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS,
OFFICER COOPER, AND DOES NOS. 1-15,
*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division

THE HON. VIRGINIA M. KENDALL
Judge Presiding
No. 15 CV 6876

---

## BRIEF OF DEFENDANTS-APPELLEES
## CHRISTOPHER CARMICHAEL AND HOLLAND & KNIGHT LLP

---

Daniel M. Feeney
Brian J. Kerwin
**Miller Shakman & Beem LLP**
180 North LaSalle Street, Suite 3600
Chicago, Illinois 60601
Tel: (312) 263-3700

*Attorneys for Defendants-Appellees*
*Christopher Carmichael and Holland & Knight LLP*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 16-3118

Short Caption: Meryl Squires-Cannon, et al., v. Forest Preserve District of Cook County, IL, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Holland & Knight LLP and Christopher Carmichael

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman & Beem LLP

Holland & Knight LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature: s/ Daniel M. Feeney          Date: 08/17/2016

Attorney's Printed Name: Daniel M. Feeney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  X    No _____

Address: Miller Shakman & Beem LLP, 180 North LaSalle Suite 3600

Chicago, IIL 60601

Phone Number: (312)759-7246          Fax Number: (312)263-3270

E-Mail Address: dfeeney@millershakman.com

rev. 01/15 GA

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on **August 17, 2016,** the foregoing **Appearance and Disclosure Statement** was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system and that attorneys representing each of the parties in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____/s/ Daniel M. Feeney_____

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 16-3118

Short Caption: Meryl Squires-Cannon v. Dennis White, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[   ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   Christopher Carmichael; Holland & Knight LLP

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Miller Shakman & Beem LLP; Holland & Knight LLP

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

      N/A

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature:  s/ Brian J. Kerwin                Date:  April 7, 2017

Attorney's Printed Name:  Brian J. Kerwin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** _____    **No** __✕__

Address:  180 N. LaSalle Street, Suite 3600, Chicago, IL 60601

Phone Number:  (312) 759-7200          Fax Number:  (312) 263-3270

E-Mail Address:  bkerwin@millershakman.com

rev. 01/15 GA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

JURISDICTIONAL STATEMENT ................................................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................................... 1

STATEMENT OF THE CASE ...................................................................................... 2

    A.    Summary of Relevant Facts. ................................................................... 2

    B.    Procedural Summary ............................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................................. 8

ARGUMENT ................................................................................................................ 10

Standard of Review .................................................................................................... 10

I.    The District Court correctly found that probable cause supported Ms. Squires-Cannon's arrest for trespass. ..................................................... 10

    A.    Probable cause standard for trespass. ................................................. 10

    B.    The Dispossession and Foreclosure and Eviction Orders establish the existence of probable cause to arrest Ms. Squires-Cannon for trespass..... 13

        1.    It was proper for the District Court to consider the state court orders. ............................................................................... 14

        2.    Ms. Squires-Cannon's alternative readings of the orders do not defeat probable cause. ............................................................... 15

        3.    Ms. Squires-Cannon cannot dispute that she was on notice that the District viewed her presence on the Property to be unlawful........... 18

    C.    The District Court may decide the existence of probable cause on a motion to dismiss........................................................................................ 20

II.    The H&K Defendants cannot be held liable for false arrest or malicious prosecution, in any event............................................................................ 22

III.    The Complaint fails to state a claim for conspiracy against the H&K Defendants, and, regardless, the intracorporate conspiracy doctrine bars such a claim. ......... 26

    A.    Count II fails to state a conspiracy claim. ......................................... 26

    B.    The intracorporate conspiracy doctrine also defeats Count II. ................... 27

IV.    Illinois's absolute litigation privilege independently shields the H&K Defendants from Ms. Squires-Cannon's claims............................................................ 28

CONCLUSION ............................................................................................................ 31

CERTIFICATE OF COMPLIANCE ........................................................................... 32

CERTIFICATE OF SERVICE .................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*4901 Corp. v. Town of Cicero*, 220 F.3d 522 (7th Cir. 2000) .................................................. 14

*Abcarian v. McDonald*, 617 F.3d 931 (7th Cir. 2010) .................................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 21, 23, 24

*Bilut v. Northwestern Univ.*, 296 Ill. App. 3d 42 (1st Dist. 1998) .................................................. 27

*Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996) .................................................. 11

*Busnovetsky v. Kooyumjian*, No. 01 C 5127, 2002 WL 1941555
    (N.D. Ill. Aug. 22, 2002) .................................................. 20

*Butler v. Goldblatt Bros. Inc.*, 589 F.2d 323 (7th Cir. 1978) .................................................. 24

*Cleveland v. Baird & Warner*, No. 94 C 4031, 1994 WL 727975
    (N.D. Ill. Dec. 30, 1994) .................................................. 20

*Doe v. City of Chicago*, 39 F. Supp. 2d 1106 (N.D. Ill. 1999) .................................................. 24, 25

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) .................................................. 19

*First Defense Legal Aid v. City of Chicago*, 319 F.3d 967 (7th Cir. 2003) .................................................. 27

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) .................................................. 15

*Heffernan v. Hunter*, No. CIV. A. 97-6041, 1998 WL 633694
    (E.D. Pa. Aug., 12, 1998), *aff'd*, 189 F.3d 405 (3rd Cir. 1999) .................................................. 27

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) .................................................. 14, 19

*Hughes v. Meyer*, 880 F.2d 967 (7th Cir. 1989) .................................................. 11, 16

*Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677 .................................................. 30

*Logan v. Caterpillar, Inc.*, 246 F.3d 912 (7th Cir. 2001) .................................................. 25

*Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630 (7th Cir. 2016) .................................................. 10

*Mannoia v. Farrow*, 476 F.3d 453 (7th Cir. 2007) ............................................................ 10, 22

*McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102 (1999) ......................................... 26

*O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152 ..................................................... 28, 29, 30

*Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340 (1st Dist. 2000) ......................... 24

*People v. Yutt*, 231 Ill. App. 3d 718 (3d Dist. 1992) ................................................................ 18

*RNA Corp. v. Procter & Gamble Co.*, 747 F. Supp. 2d 1008 (N.D. Ill. 2010) ......................... 19

*Schor v. Daley*, 563 F. Supp. 2d 893 (N.D. Ill. 2008) ............................................................. 20

*Selective Ins. Co. of South Carolina v. City of Paris*, 769 F.3d 501 (7th Cir. 2014) ................. 10

*Silk v. Board of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524,*
    795 F.3d 698 (7th Cir. 2015) ........................................................................................... 23

*Starks v. City of Waukegan*, 123 F. Supp. 3d 1036 (N.D. Ill. 2015) ....................................... 26

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ...................................................... 22

*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15 (1st Dist. 2003) ........................... 27, 28

*Travis v. Gary Cmty. Mental Health Ctr. Inc.*, 921 F.2d 108 (7th Cir. 1990) ......................... 27

*United States v. Kincaid*, 212 F.3d 1025 (7th Cir. 2000) ................................................... 12, 19

*White v. City of Markham*, 310 F.3d 989 (7th Cir. 2002) ........................................................ 16

*Williamson v. Curran*, 714. F.3d 432 (7th Cir. 2013) ............................................. 11, 15, 16, 20

## **Statutes**

720 ILCS 5/21-3 ................................................................................................................. 12

## **Other Authorities**

§586 of the Restatement (Second) of Torts .......................................................................... 30

Rule 8.4(g) of the Illinois Rules of Professional Conduct .................................................... 24

## JURISDICTIONAL STATEMENT

The Jurisdictional Statement of plaintiff-appellant is complete and correct.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court properly conclude that the state court's eviction and foreclosure orders, which dispossessed Meryl Squires-Cannon of her property and granted title to the Forest Preserve District of Cook County, provided the defendants with probable cause to believe that Ms. Squires-Cannon's continued presence on the property constituted trespass?

2.      Alternatively, did Christopher Carmichael and his law firm, Holland & Knight, commit false arrest, malicious prosecution, or conspiracy when Carmichael advised his client, the Forest Preserve District of Cook County, that the state court's eviction and foreclosure orders permitted it to treat Ms. Squires-Cannon as a trespasser on its land?

3.      Alternatively, did the District Court correctly determine that Illinois's absolute litigation privilege, intracorporate conspiracy doctrine, and qualified or quasi-judicial immunity[1] preclude Ms. Squires-Cannon's claims?

---

[1] Because the immunity issues do not pertain to Christopher Carmichael or Holland & Knight, they are addressed only in the brief of appellees Dennis White, Eric Hildebrandt, Patrick Dwyer, Officer Cooper, and the Forest Preserve District of Cook County, Illinois.

## STATEMENT OF THE CASE

**A.  Summary of Relevant Facts.**

Plaintiff-appellant, Meryl Squires-Cannon, and her husband, Richard Kirk Cannon (together, "the Cannons"), formerly lived on and operated a 400-acre estate and horse farm in Barrington Hills, Illinois – commonly referred to as Horizon Farms (the "Property"). A53. The Cannons lost the Property to foreclosure in 2013, and the Forest Preserve District of Cook County, Illinois (the "District") bought it in a subsequent foreclosure sale. *Id.* Among the various orders entered by the Circuit Court of Cook County in the foreclosure proceedings, the court dispossessed the Cannons of the Property and named the District as mortgagee in possession by order dated October 10, 2013 (the "Dispossession Order"). A62-66. The Dispossession Order required the Cannons to vacate the property by November 18, 2013. *Id.* By order of May 5, 2014, the court approved the sale of the foreclosed Property to the District and directed the Sheriff of Cook County: "in the event possession is withheld . . . to evict and dispossess, no sooner than 30 days from the entry of this Order . . . Richard Kirk Cannon and Meryl Squires Cannon from the mortgaged real estate . . . without further Order of Court" (the "Foreclosure and Eviction Order"). A72. Christopher Carmichael and his law firm, Holland & Knight, represented the District in the foreclosure action. A53.

After the court issued the Foreclosure and Eviction Order, Ms. Squires-Cannon continued to enter the Property. A53-54. Ms. Squires-Cannon subsequently alleged that

she was authorized to do so, not in her individual capacity, but as an employee of a

company called Royalty Farms, LLC, which allegedly held a lease to the Property that

she says survived the foreclosure and permitted the company to keep its horses on the

Property's farm. *Id.*

On August 12, 2014 at 1:37 p.m., Carmichael, the District's outside counsel, sent

the following e-mail to the Cannons' attorney, Robert Slobig:

> Bob,
>
> In the past several weeks, Mr. and Mrs. Cannon have repeatedly entered the
> Horizon Farms property, stating that there [sic] are there to take care of "their
> horses."
>
> The Cannons cannot enter the property any more, and have no reason to do so,
> particularly when you represented to the court that the horses are not theirs.
>
> The Cannons were evicted from the property by two different court orders.
> Continued trespassing will be addressed by the police.
>
> Please ensure the Cannons do not come onto the property again.
>
> Chris

SA13.

Carmichael advised his client, the District, that if Ms. Squires-Cannon were to

enter the Property again, it could treat her as a trespasser and arrest her. A58. Ms.

Squires-Cannon alleges that the District's general counsel, Dennis White, likewise

advised the District's police department that it should arrest Ms. Squires-Cannon if she

were found on the District's Property again. A54.

On the morning of August 13, 2014, the day after Carmichael sent the above-quoted e-mail to Ms. Squires-Cannon's lawyer, Ms. Squires-Cannon entered the property as a purported employee of Royalty Farms, LLC, at which time two members of the District's police department, Officers Cooper and Hildebrandt, arrested her. A54-55. Ms. Squires-Cannon alleges that her husband arrived at the scene shortly thereafter and, in an effort to justify her presence on the Property, presented a copy of Royalty Farms, LLC's lease to Patrick Dwyer, another of the District's police officers. A56. Ms. Squires-Cannon further alleges that her husband offered to have her voluntarily leave the property until a judge could rule on her right to enter it. A56. Ms. Squires-Cannon alleges the District's general counsel, Dennis White, instructed Officers Dwyer and Hildebrandt to transport her to a police station and charge her with criminal trespass – instructions they followed. A56.

After her arrest, Ms. Squires-Cannon brought a motion for sanctions in the foreclosure case in the Circuit Court of Cook County. SA1. Her motion sought sanctions against the District, alleging that her arrest constituted retaliation against her for opposing the foreclosure. SA5-6. In support of that motion, Ms. Squires-Cannon attached a sworn affidavit, in which she averred that Robert Slobig told her on August 12, 2014 that he had received an e-mail from the District's lawyer, Carmichael, "which threatened me with police action and trespass charges if I were found on the property." SA10 at ¶14. She attached Carmichael's e-mail as an exhibit to her motion and affidavit.

4

SA12-13. She alleged that Carmichael's e-mail, and her subsequent arrest, were in violation of the court's Foreclosure and Eviction Order, and were sanctionable. SA6. The Circuit Court denied Ms. Squires-Cannon's motion. Dkt. 18-10.

Pursuant to her arrest, Ms. Squires-Cannon was tried for criminal trespass to property before Judge Marcia Orr in the Circuit Court of Cook County on April 21, 2015. A57. Two witnesses testified for the State – a maintenance supervisor for the Property (who testified that he saw Ms. Squires-Cannon on the Property on the date of her arrest), and Dennis White, the District's general counsel (who testified regarding the foreclosure proceedings and the resulting Dispossession and Foreclosure and Eviction Orders). Dkt. 60-1 at 7, 21. At the conclusion of the bench trial, Judge Orr entered a finding of not guilty, A57, remarking that she could not conclusively determine whether "Ms. Squires Cannon was ever given notice not to enter [the Property.]" Dkt. 60-1 at 33. The State had not proffered evidence regarding the August 12, 2014 e-mail advising Ms. Squires-Cannon that her subsequent entry on the property would be treated as a trespass. *Id.*

**B. Procedural Summary.**

On August 6, 2015, Ms. Squires-Cannon brought this four-count lawsuit in the U.S. District Court for the Northern District of Illinois. A42. Count I accused the District, its general counsel Dennis White, and Officers Cooper, Hildebrandt, and Dwyer of civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1988. A51-57. Count II alleged a civil

conspiracy under Illinois state law, accusing the District, its general counsel, its outside
attorney Christopher Carmichael, and his law firm, Holland & Knight, of conspiring to
arrest Ms. Squires-Cannon. A58-59. As to Carmichael and Holland & Knight ("the H&K
Defendants"), the only specific allegations in the Complaint were that they
"communicated and conspired [with White and the District], making a plan and
agreement that [the District], through its own police force, would apprehend Plaintiff
on the Horizon Farms property, arrest her and charge her with a crime, and then
prosecute her for the same," and committed an overt act in furtherance of that
conspiracy when they "provided advice and counsel to the Forest Preserve District that
Plaintiff could be treated as a trespasser and arrested." A58. The Complaint also
accused the H&K Defendants of "participation in presenting criminal charges to obtain
an advantage in a civil matter, and thus . . . professional misconduct in violation of Rule
8.4(g) of the Illinois Rules of Professional Conduct." A59. Counts III and IV alleged that
every Defendant committed false arrest and malicious prosecution, respectively, in
violation of Illinois state law. A59-61.

On October 16, 2015, the H&K Defendants filed a motion to dismiss the three
counts against them. Dkt. 16. The District and Dennis White filed their own motion to
dismiss that same day. Dkt. 19. Officers Dwyer and Cooper filed a separate motion to
dismiss on January 12, 2016. Dkt. 40. Officer Hildebrandt filed his own motion to
dismiss on April 28, 2016. Dkt. 79.

The District Court granted the H&K Defendants' motion on February 12, 2016. A2. As explained in its Memorandum Opinion and Order, the District Court held that the two pertinent state court orders – the Dispossession Order and Foreclosure and Eviction Order – established probable cause to arrest Ms. Squires-Cannon for trespass. A6-12. As probable cause is a required element of both false arrest and malicious prosecution, those claims necessarily fail, the District Court found; and without an underlying tortious act, the conspiracy claim necessarily fails as well. A13-14. The District Court ruled that, irrespective of its probable cause determination, Illinois's intracorporate conspiracy doctrine also defeated Ms. Squires-Cannon's conspiracy claim. A14-15. And, regardless of its other rulings, the District Court held that all three counts against the H&K Defendants were independently barred by Illinois's absolute litigation privilege, which shields them from liability based on legal advice they rendered in their representation of the District in the foreclosure matter (i.e., advising their client that the state court orders permitted the District to treat Ms. Squires-Cannon as a trespasser). A20-22.

As to White and the District, the Court's February 12, 2016 Order dismissed Counts II-IV in light of its probable cause ruling, but denied their motion as to Count I, the federal civil rights allegation, because they had not technically moved for dismissal of Count I on that same basis. A6. Upon their subsequent motion to dismiss Count I, however, the Court dismissed that claim on probable cause grounds as well. A34. On

April 18, 2016, the Court granted the motion to dismiss of Officers Dwyer and Cooper, finding that quasi-judicial and qualified immunities shielded them from suit, and that probable cause defeated Counts II-IV in any event. A27-33. The Court granted Officer Hildebrandt's motion to dismiss on those same grounds in a Memorandum Opinion and Order dated July 8, 2016. A38-40. That same order denied Ms. Squires-Cannon's previously filed motion to reconsider the Court's February 12, 2016 Order, which dismissed all claims against the H&K Defendants, because her motion sought to re-litigate the arguments previously rejected by the Court. A38.

This appeal followed. A50.

## SUMMARY OF THE ARGUMENT

Two court orders expressly approved the District's purchase of Ms. Squires-Cannon's former property, required her to vacate the premises, and permitted her eviction if she refused to comply. When she failed to comport with those orders, the District's outside lawyer, Christopher Carmichael, advised the District that the orders permitted it to treat Ms. Squires-Cannon as a trespasser. He notified Ms. Squires-Cannon that she would be arrested for trespass if she continued to enter the District's Property. Accordingly, her subsequent arrest was supported by probable cause – an objective inquiry that asks whether the arresting officers had a reasonable belief that the arrestee was committing a crime – which defeats her claims of false arrest, malicious prosecution, and conspiracy to commit the same. Moreover, by failing to make a single

argument on appeal in support of her false arrest and malicious prosecution claims (Counts III and IV) against the H&K Defendants, Ms. Squires-Cannon has waived those claims. In any event, the scant allegations in the Complaint concerning the H&K Defendants do not support them.

Ms. Squires-Cannon does argue that Count II states a conspiracy claim against the H&K Defendants, but that claim also fails for reasons in addition to, and independent of, the existence of probable cause. First, without the underlying claims of false arrest and malicious prosecution, the conspiracy claim cannot survive. Second, the Complaint merely alleges that the H&K Defendants provided "advice and counsel" to the District by interpreting the state court orders, and thus fails to allege an agreement to engage in any unlawful behavior. Third, and most fundamentally, Illinois's intracorporate conspiracy doctrine precludes Ms. Squires-Cannon's claim that the H&K Defendants committed civil conspiracy when it rendered legal advice to its client, the District.

Finally, Illinois's absolute litigation privilege independently shields the H&K Defendants from all three of Ms. Squires-Cannon's claims. That privilege precludes lawsuits, like this one, that seek to hold lawyers liable for attorney conduct or communications undertaken in furtherance of the lawyers' representation of their client in litigation.

9

## ARGUMENT

### Standard of Review

Plaintiff properly states the standard of review as it applies to the District Court's rulings on Defendants' motions to dismiss pursuant to Rule 12(b)(6). *See Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). However, Plaintiff also challenges the District Court's denial of the motion to reconsider she brought pursuant to Rule 60(b), a decision the Court of Appeals reviews for an abuse of discretion. *Selective Ins. Co. of South Carolina v. City of Paris*, 769 F.3d 501, 506 (7th Cir. 2014).

## I.    The District Court correctly found that probable cause supported Ms. Squires-Cannon's arrest for trespass.

The plain text of the Dispossession and Foreclosure and Eviction Orders – which required Ms. Squires-Cannon to vacate the property and permitted her eviction, by name, if she failed to comply – made it more than reasonable for a prudent person to believe that Ms. Squires-Cannon's presence on the Property constituted an unlawful trespass. Relying on these Orders, the District Court properly concluded that probable cause existed to arrest Ms. Squires-Cannon and dismissed all counts.

### A.  Probable cause standard for trespass.

Ms. Squires-Cannon concedes that the existence of probable cause necessarily would defeat her claims against the H&K Defendants. Pl. Br. 9. *See also Mannoia v. Farrow*, 476 F.3d 453, 459 (7th Cir. 2007) (probable cause to arrest plaintiff precluded him

"from recovering on his claims of false arrest and malicious prosecution because under Illinois law, lack of probable cause is an essential element of both torts"). As stated in the case law Ms. Squires-Cannon cites, probable cause exists when the arresting officers have "facts and circumstances within [their] knowledge" that would "warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). Put differently, the objective probable cause standard "asks what a reasonable person would be warranted in believing based on the facts known to the arresting officer, not what the arresting officer actually thought or what his motivation was." *Williamson v. Curran*, 714. F.3d 432, 447 (7th Cir. 2013). "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989). Moreover, even where a suspect denies wrongdoing, or offers a plausible explanation for her conduct that, if true, would render it legal, the arrest is supported by probable cause "[s]o long as [the] officer reasonably believes" that a crime has been committed. *Williamson*, 714 F.3d at 441. Thus, an arresting officer has no "obligation to exclude all suggestions that the witness or victim is not telling the truth" before making a lawful arrest. *Id.*

11

Here, the question is whether a prudent person in defendants' shoes could have believed that Ms. Squires-Cannon was guilty of trespassing. Illinois's criminal trespass statute states, in relevant part:

> A person commits criminal trespass to real property when he or she:
>
> (1) knowingly and without lawful authority enters or remains within or on a building;
> (2) enters upon the land of another, after receiving, prior to the entry, notice from the owner or occupant that the entry is forbidden; [or]
> (3) remains upon the land of another, after receiving notice from the owner or occupant to depart … .

720 ILCS 5/21-3(a)(1-3). Accordingly, the Seventh Circuit has held that Illinois police had probable cause to arrest a suspect for trespassing when he parked his stalled car in a driveway despite the presence of "No Trespassing" signs and a previous warning from officers that the defendant was not allowed on the property. *United States v. Kincaid*, 212 F.3d 1025, 1029 (7th Cir. 2000). Because Illinois law deems it a criminal trespass to "enter[] upon the land of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden," the Seventh Circuit has said that the relevant inquiry in determining the existence of probable cause to arrest a trespasser is whether the officer "had reasonable grounds to believe that [the arrestee] received the notice." *Id.* at 1028-29 (citing 720 ILCS 5/21-3(a)(2)). And "[d]irect evidence of a defendant's prior notice is dispositive as to whether a reasonable person would believe that the defendant had received notice." *Id.* at 1029.

**B. The Dispossession and Foreclosure and Eviction Orders establish the existence of probable cause to arrest Ms. Squires-Cannon for trespass.**

On October 10, 2013, the Circuit Court of Cook County entered the Dispossession Order, which transferred possession of the Property from Ms. Squires-Cannon and her husband to the District. A62-66. That order required the Cannons to vacate the Property by November 2013. *Id.* In the May 5, 2014 Foreclosure and Eviction Order, that same court directed the sheriff to "evict and dispossess, no sooner than 30 days from the entry of this Order, . . . Meryl Squires-Cannon" from the Property "without further Order of Court." A72. As conceded in the Complaint (A53 at ¶14), the District acquired title to the Property pursuant to these orders.

As the District Court found in dismissing Ms. Squires-Cannon's claims, "a reasonable person would interpret [those] orders in conjunction with Squires-Cannon's presence on the property on August 13, 2014 as more than sufficient to create probable cause that she had committed trespass." A10. And as it held with respect to the instruction to arrest Ms. Squires-Cannon: "the only reasonable inference is that the Forest Preserve District sought to have Squires-Cannon arrested for trespass to enforce [the orders] banning her from the property because she had been entering the property every day in contravention of those orders." *Id.* Moreover, there can be no question that Ms. Squires-Cannon had notice of the Dispossession and Foreclosure and Eviction Orders; she was a party in the state court proceedings in which the H&K Defendants represented the District and, as she says, "vigorously defended" her rights in that suit.

A53 at ¶14. The District Court held correctly that it was reasonable for defendants to assume that Ms. Squires-Cannon's awareness of these orders was sufficient to notify her that her continued entry of the Property in defiance of those court rulings would subject her to arrest for trespass. A11.

1.  It was proper for the District Court to consider the state court orders.

In an effort to delay the inescapable conclusion that the state court orders supported probable cause for her arrest, Ms. Squires-Cannon contends that it was impermissible for the District Court to considered those rulings in reaching its decision. Pl. Br. 13-15. If the District Court wished to consider "material extraneous to the four corners of the complaint," she argues, it needed to convert Defendants' Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. *Id.* This argument ignores the well-settled law of this Circuit that courts may take judicial notice of public court documents in deciding a motion to dismiss. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000) ("district court could take judicial notice of the state court order" without converting a Rule 12(b)(6) motion to one for summary judgment); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[W]e recently held that the district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment.") (citation and internal quotation marks omitted).

In addition to judicial notice, there was another basis for considering those orders: they were referenced in and central to the Complaint (A53 at ¶14). *See Williamson*, 714. F.3d at 436 ("[W]e have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider . . . documents that are central to the complaint and are referred to in it . . . ."); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (same). The orders here were central to Ms. Squires-Cannon's claims, which are predicated upon and revolve around the foreclosure proceedings. Thus, the District Court properly considered the state court orders in deciding whether probable cause supported Ms. Squires-Cannon's arrest for trespass.

2. <u>Ms. Squires-Cannon's alternative readings of the orders do not defeat probable cause.</u>

Ms. Squires-Cannon argues that, although the state court orders may have stripped her *personally* of a right of entry, nothing in those orders precluded her from entering the Property *as an employee* of a purported lessee named Royalty Farms, LLC. *See* Pl. Br. 16-17. She contends that her arrest lacked probable cause because, on the morning of her arrest, her husband presented a lease that allegedly granted Royalty Farms, LLC a right to remain on the Property. The express language of the Foreclosure and Eviction Order belies this tortured alter ego theory, as it permits – without exception or caveat – the eviction of "*Meryl Squires Cannon* from the mortgaged real estate . . . without further Order of Court" "no sooner than 30 days" after the date it was entered, May 5, 2014. A72 (emphasis added). Thus, the H&K Defendants' advice in

August 2014 – more than 30 days after the order was entered – that the District could treat Ms. Squires-Cannon as a trespasser, was entirely reasonable. And any suggestion by Ms. Squires-Cannon that her arrest on August 13 was somehow improper because she had previously been allowed on the property is ineffectual, as the order – which authorized her eviction "*no sooner than* 30 days" from the date of entry – necessarily contemplated a period in which her presence would be permitted.

In any event, the law is clear that the arresting officers were under no "obligation to exclude all suggestions" that Ms. Squires-Cannon was innocent before making a proper arrest. *See Williamson*, 714 F.3d at 441 (affirming a Rule 12(b)(6) dismissal of a false arrest claim on probable cause grounds, despite plaintiff having accurately informed the arresting officers that she lawfully possessed the allegedly stolen property). Nor were they required to resolve the legal merits of Ms. Squires-Cannon's (tenuous) excuse that the purported lease of Royalty Farms, LLC somehow trumped the state court's clear mandate that she vacate the property or else face eviction. *See Hughes*, 880 F.2d at 969; *White v. City of Markham*, 310 F.3d 989, 996-97 (7th Cir. 2002) (explaining that "we could not expect an officer with even a detailed knowledge" of current law – much less a reasonable person – to have had fair warning that a tenant had rights superior to that of the landlord to remain on the premises.). And as for the H&K Defendants, whose alleged wrongdoing amounts only to the rendering of legal advice the day before her arrest, none of the justifications advanced by Ms. Squires-Cannon or

16

her husband on the morning of August 13 has any impact on whether their beliefs and advice the day prior were reasonably prudent.

Ms. Squires-Cannon also argues that she could not be removed from the property because the phrase "Unknown Owners and Non-Record Claimants" was struck from the eviction order. But Ms. Squires-Cannon was neither – and the court's orders unequivocally and specifically dispossessed *her*, by name and without exception. Likewise, Ms. Squires-Cannon's contention that Royalty Farms, LLC could not be evicted under the Foreclosure and Eviction Order "without additional proceedings," (*see* Pl. Br. 17), is wholly irrelevant to the issue of whether *she* was personally dispossessed. Any suggestion that "additional proceedings" were required to remove her from the Property is directly refuted by the plain language of the order, which permitted her eviction "without further Order of Court." *See* A72.

Lastly, Ms. Squires-Cannon suggests that, even if she were trespassing on the District's Property, the court's orders permitted her *eviction*, but not her arrest. *See* Pl. Br. 14 ("It authorized the Sheriff of Cook County to *evict* (not to "arrest") . . ."), and 17 ("FPD had no authority to use self-help to enforce paragraph 6 [permitting her eviction] against Meryl"). This argument misses the point entirely: the orders removed any right she had to be present on the property and permitted her removal if she refused to vacate and surrender possession. The orders gave possession of the Property to the District, which acquired title in May 2014 (A53 at ¶14), and therefore the right to exclude

Ms. Squires-Cannon from the Property. *See People v. Yutt*, 231 Ill. App. 3d 718, 722 (3d Dist. 1992) (A property "owner" has "traditional property rights, including the power to exclude people."). This made it reasonable for the H&K Defendants (as well as the District and its officers) to conclude that her continued presence on the Property constituted trespass. The only operative question for probable cause is whether it was *reasonable* to believe that Ms. Squires-Cannon could be a trespasser in light of her refusal to abide by court orders that (1) required her to vacate and surrender possession of the Property, and (2) permitted the eviction of "Meryl Squires Cannon" "in the event possession [was] withheld." The orders unequivocally answer that question in the affirmative.

3. <u>Ms. Squires-Cannon cannot dispute that she was on notice that the District viewed her presence on the Property to be unlawful.</u>

Without expressly arguing that she lacked notice before her August 13, 2014 arrest that her entry on the Property would be considered an act of trespass by the District, Ms. Squires-Cannon implies as much throughout her appellate brief. *See, e.g.*, Pl. Br. 4 ("unbeknownst to Meryl" the District's police force had been instructed to treat her as a trespasser); *id.* (the police officers "lay in wait" on the morning of her arrest); *id.* at 23 ("it was communicated to her by [the District's police department] that she was permitted on Horizon Farms" and that those officers "regularly checked in with their superiors to confirm this"). Such suggestions are wholly implausible, both because of the prior state court orders (as the District Court found), and because of Carmichael's

18

August 12 e-mail to Ms. Squires-Cannon's attorney, Robert Slobig (who also represents

Ms. Squires-Cannon in this case). In that e-mail, the District's attorney informed Ms.

Squires-Cannon that she was expressly prohibited from entering the Property and that

"[c]ontinued trespassing will be addressed by the police." Ms. Squires-Cannon swore in

an affidavit submitted in the state foreclosure action that Mr. Slobig advised her of

Carmichael's e-mail on the day before her arrest. She also attached a copy of the

Carmichael e-mail in support of her motion.[2] Thus, there can be no dispute that the

Defendants possessed a reasonable belief that Ms. Squires-Cannon had notice that she

would be considered a trespasser and arrested if she returned to the Property. *See*

*Kincaid*, 212 F.3d at 1029.

It bears noting that Ms. Squires-Cannon attempted to claim lack of notice in

briefing before the District Court, *see* Dkt. 26 at 3, and Dkt. 60 at 6, but later withdrew

that assertion in response to a Rule 11 letter that highlighted her prior affidavit. *See* Dkt.

73 at 9 n.3; "Withdrawal of Contention," SA15. After conceding below that she had

received notice, Ms. Squires-Cannon may not advance any argument on appeal that she

was unaware that she could be arrested for trespass when she entered the property on

August 13.

---

[2] The Court can properly take judicial notice of these documents (SA1-13), as they are part of the public record in the state court foreclosure proceedings and their accuracy is not subject to dispute. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *Henson*, 29 F.3d at 284; *RNA Corp. v. Procter & Gamble Co.*, 747 F. Supp. 2d 1008, 1019 n.6 (N.D. Ill. 2010) (taking judicial notice of an affidavit filed in another court).

**C. The District Court may decide the existence of probable cause on a motion to dismiss.**

Finally, Ms. Squires-Cannon argues that the issue of probable cause is a fact-based question that may not be decided on a motion to dismiss. Pl. Br. 15-16, 21. She is wrong. The Seventh Circuit has held that a district court may decide the question of probable cause on a Rule 12(b)(6) motion and dismiss the complaint on that basis alone. *See Williamson*, 714 F.3d at 448 (affirming dismissal of false arrest claim because "[t]he facts set forth in the body of [plaintiff's] complaint and the incorporated exhibits reveal that the deputies had reason to believe that [the property mistaken as stolen] was not in the rightful possession of the [arrestee]"). Motions to dismiss based on the existence of probable cause are commonly granted when such determination is dispositive of a plaintiff's claims. *See, e.g., Williamson*, 714. F.3d at 449; *see also Schor v. Daley*, 563 F. Supp. 2d 893, 899, 901 (N.D. Ill. 2008) (dismissing claims of false arrest and malicious prosecution where plaintiff's complaint indicated he was driving while using a cell phone, a violation of a city ordinance that provided a lawful basis to arrest); *Busnovetsky v. Kooyumjian*, No. 01 C 5127, 2002 WL 1941555, at *1 (N.D. Ill. Aug. 22, 2002) (dismissing false arrest claim where plaintiff's complaint set forth a factual basis for the officers to believe plaintiff had committed trespass); *Cleveland v. Baird & Warner*, No. 94 C 4031, 1994 WL 727975, at *2 (N.D. Ill. Dec. 30, 1994) (dismissing false arrest claim where complaint revealed that the property owner had told the arresting officers that plaintiff had no right to be on the property, thus establishing a factual basis by which

arresting officers "could have reasonably believed the Plaintiff to be committing a criminal trespass").

The District Court was in no way bound by the Complaint's conclusory allegation that her arrest was made without probable cause. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere conclusions and "formulaic recitations of the elements of a cause of action" will not suffice at the motion to dismiss stage, and a court is not bound to accept legal conclusions couched as factual allegations). Moreover, Ms. Squires-Cannon's conclusory denial of probable cause is contradicted by the Complaint's other allegations, as well as the court orders referenced in and central to her claims (of which the court may take judicial notice). Those orders prevail over any contrary conclusory allegations. *Cf. Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) ("Where [the complaint's] allegations are contradicted by written exhibits that [plaintiff] attached to his amended complaint, . . . the exhibits trump the allegations."). Thus, it was proper for the District Court to decide the question of probable cause on the papers before it.

A Rule 12(b)(6) dismissal is appropriate when a claim lacks "facial plausibility" – that is, where the Complaint fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, there is no *reasonable* inference that can be drawn from the facts alleged that would establish that Ms. Squires-Cannon's arrest

lacked probable cause. This is especially true for the H&K Defendants, who – the

Complaint makes evident – were named in this lawsuit because of a legal opinion they

rendered regarding the District's property rights. The Seventh Circuit has been explicit

that a "plaintiff must do better than putting a few words on paper that, in the hands of

an imaginative reader, *might* suggest that something has happened to her that *might* be

redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)

(emphasis in original). Notably, Ms. Squires-Cannon makes no allegation (nor could she

within the confines of Rule 11) that the "advice and counsel" provided by the H&K

Defendants was made in bad faith or without genuine conviction. And if she had made

such an allegation, the plain language of the state court orders on which that advice was

based – requiring her to vacate the property and permitting her eviction – would render

it implausible.

Accordingly, the District Court's conclusion that probable cause supported Ms.

Squires-Cannon's arrest for trespass should be upheld, and the dismissal of the state

law claims of false arrest, malicious prosecution, and conspiracy to commit the same

(Counts II, III and IV) should be affirmed on that basis. *See Mannoia*, 476 F.3d at 459.

## II.    The H&K Defendants cannot be held liable for false arrest or malicious prosecution, in any event.

Even if Ms. Squires-Cannon could properly allege a lack of probable cause, she

has not otherwise stated claims for false arrest or malicious prosecution against the

H&K Defendants. Conspicuously absent from Ms. Squires-Cannon's argument as to

why the District Court erred in concluding probable cause existed or in dismissing her

false arrest and malicious prosecution claims is a single reference to the H&K

Defendants. In fact, her brief makes no attempt to explain her legal theory for how the

H&K Defendants – the District's outside civil lawyers and non-government actors – can

be held liable for an arrest they did not make or a prosecution they were powerless to

commence or cause. As such, Ms. Squires-Cannon has waived any argument that the

H&K Defendants committed the state law torts of false arrest or malicious prosecution.

*Silk v. Board of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 709 (7th

Cir. 2015) ("As we have repeatedly held, the absence of any supporting authority or

development of an argument [in an appellate brief] constitutes a waiver on appeal.")

(citation and internal quotation marks omitted).

In any event, the H&K Defendants can face no false arrest or malicious

prosecution liability on the three isolated allegations lodged against the H&K

Defendants in the Complaint, all of which appear in the claim for civil conspiracy,

Count II. Ms. Squires-Cannon alleges that the H&K Defendants "communicated and

conspired" with the Forest Preserve District defendants to "mak[e] a plan and

agreement that the Forest Preserve District" would arrest and prosecute Plaintiff. A58 at

¶42. Such conclusory allegations should not be accepted as true. *See Twombly*, 550 U.S.

at 555 (rejecting "formulaic recitations of the elements of a cause of action" and legal

conclusions at the motion to dismiss stage).

Similarly futile is the allegation that the H&K Defendants "participat[ed] in presenting criminal charges to obtain an advantage in a civil matter, and thus [committed] professional misconduct in violation of Rule 8.4(g) of the Illinois Rules of Professional Conduct." A59 at ¶44. This too runs afoul of *Twombly*, and is irrelevant in any event. *See Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 352 (1st Dist. 2000) ("The mere fact that an attorney may have violated professional ethics does not, in and of itself, give rise to a cause of action for damages.").

The only specific factual allegation is that the H&K Defendants committed the "overt act" of "provid[ing] *advice and counsel*" to the District that Ms. Squires-Cannon "*could be treated* as a trespasser and arrested." A58 at ¶43a (emphases added). Even if that advice had been inaccurate (it was not),the allegation does not support a cause of action because "a private party who furnishes inaccurate information to law enforcement officers could not be held liable for false arrest on that ground alone." *Butler v. Goldblatt Bros. Inc.*, 589 F.2d 323, 326 (7th Cir. 1978). Only "if the defendant goes beyond merely giving information and *participates* in making an arrest which turns out to have been unlawful" can a non-government actor be held liable for false arrest. *Doe v. City of Chicago*, 39 F. Supp. 2d 1106, 1113 (N.D. Ill. 1999) (emphasis added). "It is well settled in Illinois that giving information to police in itself is insufficient to constitute participation in arrest." *Butler*, 589 F.2d at 326 (citation and internal quotation marks omitted). Rather, a defendant who provides "information leading to an arrest" will only

24

face liability if it can be said that such person actually "*request[ed] and obtain[ed]* the arrest." *Doe*, 39 F. Supp. 2d at 1114 (emphasis added).

Similarly, a private citizen does not commit the tort of malicious prosecution "merely by reporting information to the police." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citation and internal quotation marks omitted). A private citizen commits malicious prosecution only if he "instituted the proceedings against the plaintiff," "knowingly made false statements to the police," or "requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Id.*

Here, Ms. Squires-Cannon makes no allegations of the sort – alleging only that the H&K Defendants provided the "advice and counsel" that she "*could be*" treated as a trespasser. Rather, the only reasonable inference to be made from the allegations is that the H&K Defendants, the District's civil litigation counsel in the state foreclosure matter, provided a legal interpretation of the relevant state court orders, including what the District *could* do. After that, the District and its officers were free to exercise their own discretion in dealing with Ms. Squires-Cannon. Advising a client of its rights does not give rise to claims for false arrest or malicious prosecution.

**III.** **The Complaint fails to state a claim for conspiracy against the H&K Defendants, and, regardless, the intracorporate conspiracy doctrine bars such a claim.**

    **A. Count II fails to state a conspiracy claim.**

Although Ms. Squires-Cannon mentions the H&K Defendants in the portion of her appellate argument addressing her conspiracy claim, Count II, (Pl. Br. 20), that claim fails for a variety of reasons. First, in Illinois a "[c]ivil conspiracy is an intentional tort and requires proof that a defendant knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133 (1999) (citation and internal quotation marks omitted). To make out a conspiracy claim, "a plaintiff must allege an agreement *and* a tortious act committed in furtherance of that agreement." *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1064 (N.D. Ill. 2015) (quoting *McClure*, 188 Ill.2d at 133)).

Here, the only allegedly "unlawful acts" about which Ms. Squires-Cannon complains are her arrest and the commencement of her prosecution without probable cause. The existence of probable cause negates the possibility of an unlawful conspiracy. Further, the only "agreement" the Complaint alleges the H&K Defendants to have made was one "to provide advice and counsel" regarding the District's legal rights under the state court orders. A58 at ¶43. But if advising a client constituted civil conspiracy, any attorney who advises a client of its rights vis-à-vis a third party would

be exposed to civil liability as a co-conspirator. The Seventh Circuit has expressly rejected such a rule. *See Travis v. Gary Cmty. Mental Health Ctr. Inc.*, 921 F.2d 108, 111 (7th Cir. 1990) (holding that there was no conspiracy where an entity consulted with outside counsel about terminating the plaintiff's employment, because otherwise it "would discourage corporations from obtaining legal advice before acting, hardly a sound step to take").

### B.  The intracorporate conspiracy doctrine also defeats Count II.

Regardless, Illinois's "intracorporate conspiracy doctrine" precludes a claim for civil conspiracy between an entity and its agents, such as an attorney and his client. *First Defense Legal Aid v. City of Chicago*, 319 F.3d 967, 969 (7th Cir. 2003) (An attorney is an agent of his client.); *Bilut v. Northwestern Univ.*, 296 Ill. App. 3d 42, 49 (1st Dist. 1998) ("[P]rincipals and their agents are legally incapable of conspiring with one another because the acts of an agent are considered the acts of his principal."); *accord Heffernan v. Hunter*, No. CIV. A. 97-6041, 1998 WL 633694, at *5 (E.D. Pa. Aug., 12, 1998) ("[a]ttorneys are immune from charges of conspiracy based upon advice rendered to its clients . . . ."), *aff'd*, 189 F.3d 405, 413 (3rd Cir. 1999) (emphasizing that "compelling policy concerns" underly "the ban on conspiracies in the attorney-client context").

Ms. Squires-Cannon argues that *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 28 (1st Dist. 2003), supports a conspiracy claim involving an attorney and client. But *Thornwood* addressed a charge of aiding and abetting fiduciary breach, not conspiracy.

27

The attorneys in that case were not sued for rendering legal advice, but for knowingly creating fraudulent documents that helped their client breach its fiduciary duties and defraud the plaintiff. *Id.* at 766. The court expressly relied on the fact that the attorneys took affirmative steps that "substantially assisted their clients" in injuring the plaintiff. *Id.* at 768. In contrast, the H&K Defendants are alleged merely to have interpreted court orders arising out of litigation in which they represented the District. The Complaint alleges nothing analogous to *Thornwood*.

For any one of these reasons, the District Court's dismissal of the conspiracy count against the H&K Defendants should be affirmed.

## IV.    Illinois's absolute litigation privilege independently shields the H&K Defendants from Ms. Squires-Cannon's claims.

The District Court correctly held that Illinois's absolute litigation privilege precludes claims, like those here, that seek to impose tort liability on an attorney for engaging in communications with his client in connection with a pending judicial proceeding. Illinois law is clear that this privilege exists to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients" by enabling attorneys to "fully and fearlessly communicate" with them. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶24. Accordingly, it protects lawyers from claims of wrongdoing based on communications with clients "before, during, and after litigation" when those communications are "in furtherance of [the] representation." *Id.* at ¶¶25-26. This is precisely what the Complaint alleges the H&K Defendants to have done.

Acknowledging the roadblock this privilege presents, Ms. Squires-Cannon attempts to cast the H&K Defendants' advice concerning the state court orders as unconnected to the foreclosure litigation. But her argument ignores the fact that she sought sanctions in the foreclosure action concerning the very arrest, and advice related to that arrest, at issue here. *See* SA5. Her own sanctions motion demonstrates that the advice to the District was provided in the course of the underlying foreclosure litigation.

Moreover, it is undisputed that the H&K Defendants represented, and continue to represent, the District in the state foreclosure litigation. A52 at ¶8; A53 at ¶14. The core purpose of that legal representation was the transfer of possession and control of the Property from Ms. Squires-Cannon and her husband to the District. A53 at ¶14; A72 at ¶6. When the H&K Defendants advised the District regarding the legal effect of the foreclosure orders and judgments obtained in the foreclosure action, clearly they were acting in their role as litigation counsel – and therefore enjoyed an absolute privilege. *See O'Callaghan*, 2015 IL App (1st) 142152, ¶¶24, 26 (the privilege, which "applies to out-of-court communications" between attorney and client, exists to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients" and the ability to "fully and fearlessly communicate" with their clients).

Citing older case law, Ms. Squires-Cannon first argues that the absolute litigation privilege protects only against defamation claims. But more recent Illinois decisions

29

have rejected that very argument. *See id.* at ¶27 ("Contrary to the O'Callaghans'

suggestion, we find that the absolute attorney litigation privilege may extend beyond …

defamation claims."). Although the privilege originated from §586 of the Restatement

(Second) of Torts, which protects attorneys from defamation claims for communications

made in connection with litigation, Illinois extends the privilege to claims other than

defamation. *See Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶15-17.

Otherwise, the protection would be "meaningless," as plaintiffs could avoid it by a

"simple recasting of the cause of action." *Id.* at ¶17 (citations omitted) (applying the

privilege to bar claims for negligent infliction of emotional distress and breach of

contract); *see also O'Callaghan*, 2015 IL App (1st) 142152, ¶¶26-27 (applying the privilege

to bar claims of intentional infliction of emotional distress and strict liability based on

attorney communications and attorney conduct).

Indeed, Ms. Squires-Cannon appears to concede that the privilege extends

beyond defamation claims by citing *Johnson* and listing at least four torts to which the

privilege has been applied. Pl. Br. 28-29. She further asserts that the privilege should be

limited to situations where "the administration of justice and public service require

immunity," *id.* at 29 (quoting *O'Callaghan*, 2015 IL App (1st) 142152, ¶24), but that is the

case here, where Ms. Squires-Cannon seeks to hold counsel liable in tort for advising a

client about court orders issued during the course of litigation.

The District Court was correct that Illinois's absolute litigation privilege provides an independent basis for dismissing the claims against the H&K Defendants.

## CONCLUSION

The H&K Defendants ask that this Court affirm the District Court's dismissal of the three claims against them: Count II (civil conspiracy), III (false arrest), and Count IV (malicious prosecution).

Defendants-Appellees,
Christopher Carmichael and
Holland & Knight LLP


By___/s/ Daniel M. Feeney_____
        One of their attorneys

Dated: April 7, 2017

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B ) and Cir. R. 32(c) because it contains 7,677 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared

in a proportionally spaced typeface using Microsoft Word 2010 in 12-point Palatino

Linotype, with footnotes in 11-point Palatino Linotype.


Dated: April 7, 2007

By: /s/ Daniel M. Feeney_____

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2007, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by

using the CM/ECF system.  I certify that all participants in the case are registerd

CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: April 7, 2007

/s/ Daniel M. Feeney_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

No. 16-3118

---

MERYL SQUIRES-CANNON,
*Plaintiff-Appellant,*

v.

DENNIS WHITE, ERIC HILDEBRANDT, PATRICK DWYER, CHRISTOPHER CARMICHAEL,
HOLLAND & KNIGHT LLP, THE FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS,
OFFICER COOPER, AND DOES NOS. 1-15,
*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division

THE HON. VIRGINIA M. KENDALL
Judge Presiding
No. 15 CV 6876

---

## SUPPLEMENTAL APPENDIX OF DEFENDANTS-APPELLEES
## CHRISTOPHER CARMICHAEL AND HOLLAND & KNIGHT LLP

---

Daniel M. Feeney
Brian J. Kerwin
**Miller Shakman & Beem LLP**
180 North LaSalle Street, Suite 3600
Chicago, Illinois 60601
Tel: (312) 263-3700

*Attorneys for Defendants-Appellees*
*Christopher Carmichael and Holland & Knight LLP*

## TABLE OF CONTENTS

Meryl Squires-Cannon's Motion for Sanctions, filed October 16, 2014..........................SA1

Affidavit of Meryl Squires-Cannon in support of the Motion for Sanctions,
  executed October 8, 2014..............................................................................................SA8

August 12, 2014 E-mail from Christopher Carmichael to Robert Slobig,
  Exhibit G to the Motion for Sanctions....................................................................SA12

Withdrawal of Contention, filed April 27, 2016 ............................................................SA14

i

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

BMO HARRIS BANK, N.A., as successor to )
Amcore Bank, N.A., and FOREST PRESERVE )
DISTRICT OF COOK COUNTY, ILLINOIS, )
                                       )
        Plaintiffs-Counterdefendants   )        No. 09 CH 18291
                                       )
                v.                     )        Judge Daniel Patrick Brennan
                                       )
ROYALTY PROPERTIES, LLC, et al.,       )
                                       )
        Defendants-Counterplaintiffs.  )

## DEFENDANT MERYL SQUIRES CANNON'S MOTION FOR SANCTIONS

Defendant, Meryl Squires Cannon ("Meryl"), by her attorneys, Torshen, Slobig, Genden, Dragutinovich & Axel, Ltd., moves for an order imposing appropriate sanctions on plaintiff, the Forest Preserve District of Cook County, Illinois for its illegal harassment in retaliation for her vigorous opposition to the claims of the Forest Preserve District in this case.

As discussed in detail below, the harassment included the arrest of Meryl by the Forest Preserve District's police on a totally unjustifiable charge of criminal trespass. This arrest constituted a blatant and willful disregard by the Forest Preserve District of Cook County, Illinois of the unequivocal terms of the Order entered by this Court in this case on May 5, 2014.

In support of this motion, defendants state as follows:

1.      Commencing in 2003, and through the present, Royalty Farms, LLC, a non-party to this action, leased the Property which is the subject of the instant foreclosure action, i.e., the property commonly known as 311 Algonquin Road, Barrington Hills, Illinois. The initial lease was with Horizon Farms, LLC in 2003. The Property was acquired on December 22, 2006 by defendant Royalty Properties, LLC ("Royalty Properties"), a separate legal entity. Although the

**SA 1**

2003 lease provided that any new owner of the farm automatically becomes the landlord,

Royalty Properties, LLC entered into a new lease with Royalty Farms, LLC, dated January 7,

2007. (Exhibit A hereto; *see also* the Affidavit of Meryl Squires Cannon). This lease continues

to be in effect and gives Royalty Farms, LLC and its employees and agents the right of access to

the Property.

    2.    Meryl Squires Cannon is a paid employee of Royalty Farms, LLC. Her job

responsibilities include, but are not limited to, all equine care oversight, foaling, mare and foal

care, diet and nutrition decisions, taking temperatures, turnout, evening feeding and wellness

check, paddock inspection and fence inspection. (*See* Meryl Squires Cannon Affidavit ¶2).

    3.    This Court has entered orders expressly <u>rejecting</u> any claim by the Forest Preserve

District to terminate the rights of Royalty Farms, LLC with respect to its lease.

    4.    Specifically, on May 5, 2014, this Court expressly <u>excluded</u> from the Order

Approving Foreclosure Sale and Entry of Deficiency Judgment any provision that would affect

the rights of occupants on the subject premises other than the parties to this case. (Exhibit B is a

copy of the May 5, 2014 Order.)

    5.    The Forest Preserve District sought entry of an order that would authorize the

Sheriff to "evict and dispossess" from the subject mortgaged premises the named defendants <u>and</u>

any "Unknown Owners and Non-Record Claimants." This Court scratched out the words

"Unknown Owners and Non-Record Claimants." *See* Exhibit B, at p. 6, ¶6.

    6.    Further, ¶7 of the May 5, 2014 Order emphasized that non-parties to this case (*i.e.*,

"occupants other than the individuals named in the Order of Possession") could not be evicted

"without a Supplemental Order of Possession or an order from the Forcible Entry of Detainer

2

**SA 2**

Court." *See* Exhibit B at p. 7, ¶7.

7.     On numerous occasions, the Forest Preserve District was given unequivocal notice that Royalty Farms, LLC had a right to access and occupy the Property as a tenant unaffected by the foreclosure.

8.     *Inter alia*, Meryl sent, on May 27, 2014, an e-mail on behalf of Royalty Farms, LLC to Dennis White, the chief attorney of the Forest Preserve District. The e-mail expressly noted that Royalty Farms, LLC was a tenant and had a lease with Royalty Properties, LLC. (Exhibit C hereto).

9.     Despite this, the Forest Preserve District asserted that Meryl and Richard were improperly keeping horses on the foreclosed Property after being evicted under the May 5, 2014 Order, characterizing the horses (owned by Royalty Farms, LLC) as "abandoned."

10.     Defendants' counsel herein advised counsel for the Forest Preserve District that this was not correct in an e-mail dated May 30, 2014, which stated: "The horses that remain belong to tenants not party to the litigation." (Exhibit D hereto).

11.     Despite these communications, the Forest Preserve District posted a "Legal Notice of Eviction" which characterized the horses on the property as "abandoned."

12.     Defendants' counsel responded by again correcting the Forest Preserve District's misunderstanding of the facts. He advised the counsel for the Forest Preserve District that the horses belonged to tenants with a legal right to be on the Property. Specifically, in an e-mail dated July 14, 2014, defendants' counsel stated that "the horses are being cared for daily by the existing tenants." (Exhibit E hereto). The July 14, 2014 e-mail further noted that the Forest Preserve District was engaging in conduct which constituted.

3

**SA 3**

"threats and intimidation of the existing tenants, who claim to have a legal right to occupy the property (unless and until formal eviction proceedings, with proper service of summons upon each of the existing tenants, are instituted and an eviction court declares otherwise after due process is had)."

13.     On August 12, 2014, counsel for Royalty Farms, LLC sent to the Forest Preserve District Police Department a facsimile of an e-mail communication with the Cook County Sheriff. This communication clearly stated that Royalty Farms, LLC was a tenant on the foreclosed premises "under a valid existing lease." The letter from counsel for Royalty Farms, LLC specified in detail that this Court had refused to terminate the possessory rights of non-parties such as Royalty Farms, LLC. (Exhibit F hereto).

14.     In the period between the entry of the May 5, 2014 Order through August 7, 2014, the Forest Preserve District and its police and other employees repeatedly recognized that Royalty Farms, LLC and its employees had a legal right to be on the foreclosed Property. As demonstrated by Meryl's affidavit, on various occasions she was asked to identify herself when she was on the Property taking care of Royalty Farms, LLC's horses (*e.g.*, on May 30, 2014; June 25, 2014; July 13, 2014, July 20, 2014 and August 7, 2014). On each of these occasions she provided identification and explained that she was on the Property caring for Royalty Farms, LLC's horses. On several of these occasions the Forest Preserve District officer called superiors giving Meryl's name, and received confirmation that Meryl had permission to be on the Property.

15.     Nonetheless – despite the fact that the Forest Preserve District had been advised, and apparently recognized, that Royalty Farms, LLC and its employees had a right to be on the premises – its counsel herein continued to threaten Meryl with legal action if she went on the Property.

4

**SA 4**

16.     On August 12, 2014, counsel for the Forest Preserve sent an e-mail to Robert

Slobig, counsel for the Cannon Parties, asserting, *inter alia*, that Meryl had repeatedly entered the

Property to take care of the horses on the Property. (*See* Exhibit G hereto). Although counsel for

the Forest Preserve and others at the Forest Preserve District had been repeatedly advised that the

horses belonged to a legitimate tenant, counsel for the Forest Preserve District concluded his e-

mail with the following threat: "Continued trespassing will be addressed by the police. Please

ensure the Cannons do not come onto the property again."

17.     On August 13, 2014, in premeditated fashion, the Forest Preserve District Police

lay in wait for Meryl to go to work. When she arrived at 6:00 A.M. the Forest Preserve District

Police arrested Meryl for criminal trespass, ignoring her statements that she was legitimately on

the Property performing work for Royalty Farms, LLC.

18.     The arrest by the Forest Preserve Police was humiliating, embarrassing,

frightening and insulting. Meryl was handcuffed and placed in the caged back seat of the FPD

Police car. While handcuffed, she was made to wait in the police car for over an hour until the

arrival of a supervisor. The supervisor was intimidating and yelled at Meryl which was, needless

to say, still more frightening. In a purposeful attempt to further intimate Meryl, he threatened to

take her to the Maywood Police station for processing. Meryl was eventually taken to the

Barrington Hills Police Station, where she was charged, fingerprinted and photographed.

19.     As the above facts demonstrate, the Forest Preserve District arrested Meryl for

trespass with full knowledge that, as an employee of Royalty Farms, LLC, she had a legal right to

be on the Property.

**SA 5**

20.    The Forest Preserve District arrest of Meryl constituted a blatant disregard of this Court's express Order which rejected the Forest Preserve District's effort to terminate the possessory rights of non-parties such as Royalty Farms, LLC.

21.    The above facts demonstrate that, after initially recognizing the right of Royalty Farms, LLC and its employees to be on the Property, an arbitrary decision was made at the highest levels of the Forest Preserve District to ignore those rights and the plain meaning of this Court's Order.

22.    The humiliating and unjustified arrest must be viewed in the context of the extended and acrimonious litigation of this case. It should be perceived as outrageous retaliation against Meryl and the other Cannon Parties for vigorously asserting their defense of this case.

23.    In this context, the arrest of Meryl, in disregard of her rights as a Royalty Farms, LLC employee under this Court's order, constitutes a sanctionable effort by the Forest Preserve District to further its litigation objectives by improper, and indeed outrageous, means. This Court has the inherent authority to sanction parties for such conduct.

WHEREFORE, defendant Meryl Squires Cannon prays that this Court:

(a)    allow her to take discovery to obtain further information about the circumstances by which the Forest Preserve District determined to arrest Meryl, not withstanding this Court's orders and its knowledge that she was on the on the Property as an employee of a legal tenant;

(b)    impose appropriate sanctions against the Forest Preserve District of Cook County, Illinois for the harassment of the defendants, including the arrest of Meryl Squires Cannon;

6

**SA 6**

(c)    granting such other and further relief as is just and equitable.

                                Respectfully submitted,

                                Meryl Squires Cannon,
                                Defendant-Counterplaintiff


                                By: _____
                                     One of their attorneys

Robert J. Slobig
James K. Genden
Torshen, Slobig, Genden, Dragutinovich & Axel, Ltd.
105 W. Adams Street
Chicago, IL 60603
(312) 372-9282
Attorney #91088

**SA 7**

STATE OF ILLINOIS     )
                        )    SS
COUNTY OF COOK   )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

BMO HARRIS BANK, N.A., as successor to    )
Amcore Bank, N.A., and FOREST PRESERVE   )
DISTRICT OF COOK COUNTY, ILLINOIS,    )
                                )
          Plaintiffs-Counterdefendants, )     No 09 CH 18291
                               )
          v.                  )     Judge Daniel Patrick Brennan
                               )
ROYALTY PROPERTIES, LLC, et al.,     )
                               )
       Defendants-Counterplaintiffs )

## AFFIDAVIT OF MERYL SQUIRES CANNON

Meryl Squires Cannon, being duly sworn on oath, deposes and states as follows:

1.     I am of legal age.  I have personal knowledge of the facts stated in this affidavit. If called upon to give testimony in this case, my testimony would be as stated herein.

2.     I am a paid employee of Royalty Farms, LLC. My job responsibilities include, but are not limited to, all equine care oversight, foaling, mare and foal care, diet and nutrition decisions, taking temperatures, turnout, evening feeding and wellness check, paddock inspection and fence inspection.

3.     Commencing in 2003, Royalty Farms, LLC leased the property commonly known as 311 Algonquin Road, Barrington Hills, Illinois from Horizon Farms, Inc. until the sale at auction of Horizon Farm December 22, 2006, when the property was purchased by Royalty Properties, LLC.

4.     Commencing in January 2007, the lease for the property identified the lessor of the property as Royalty Properties, LLC.  Royalty Properties, LLC is a separate legal entity from Royalty Farms, LLC.  Royalty Farms, LLC has been an uninterrupted tenant on the property pursuant to that lease from January 2007 to the present.  A true and correct copy of the lease is attached to my motion for sanctions as Exhibit A.

5.     On May 5, 2014, the Circuit Court of Cook County entered, in the case captioned BMO Harris Bank, N.A. et al v. Royalty Properties et al, an Order Approving Foreclosure Sale

**SA 8**

and Entry of Deficiency Judgment. ("The May 5, 2014 Order")  The May 5, 2014 Order expressly denied the Forest Preserve District of Cook County, Illinois the right to evict any non-party to this case, such as Royalty Farms, LLC, "without a Supplemental Order of Possession or an order from the Forcible Entry of Detainer Court."

6.      On May 27, 2014, after the Court entered the May 5, 2014 Order, I sent an e-mail on behalf of Royalty Farms, LLC to Dennis White, the chief attorney of the Forest Preserve District.  My e-mail expressly noted that Royalty Farms, LLC was a tenant pursuant to a valid lease.  (A true and correct copy of this e-mail is attached my motion for sanctions as Exhibit B).

7.      As a paid employee of Royalty Farms, LLC, I continued to perform my job duties of caring for the Royalty Farms, LLC's horses which were on the property and having Royalty Farms, LLC equipment repaired and cared for.  I continued to perform these duties on the property because Royalty Farms, LLC has a lease for the property and has not been evicted under the terms of the May 5, 2014 Order.

8.      Furthermore, on numerous occasions I have spoken with Forest Preserve District personnel advising them that I was on the property to perform my job duties as an employee of Royalty Farms, LLC.

9.      On or about May 30, 2014, while performing my duties for Royalty Farms, LLC, I was approached by a Forest Preserve District employee driving a Forest Preserve District vehicle and asked to show my identification.  I explained that I am employee of Royalty Farms, LLC, and was there feeding the mares and babies.  I gave him my Illinois driver's license.  He called on his radio and gave the party on the other end my name and told that person that I was an employee of Royalty Farms, LLC.  After the call was concluded, he gave me back my license and told me I had permission to be on the farm.

10.      Similarly, on or about June 25, 2014, while performing my duties for Royalty Farms, LLC, I was again asked for my ID.  My information was called in.  Once again, I was told that I had permission to be on the farm.  On this occasion, too, I had expressly stated that I was performing duties for Royalty Farms, LLC.

11.      Once again, on or about July 13, 2014 while I was performing my duties of feeding the mares and babies in the evening, a Forest Preserve District car pulled up and an officer got out.  The officer asked to see my ID.  I gave him my IL driver's license.  He called it in to "Central".  He gave "Central" my name.  I heard a woman answering the call say I had permission to be on the farm.  The officer then told me I had permission to be on the farm.  I asked his name and I believe he told me it was "Paul" but I am not certain of his name.  On this occasion, too, I had expressly stated that I was performing duties for Royalty Farms.

**SA 9**

12.    On or about Sunday, July 20, while performing my duties for Royalty Farms, an officer stopped me and asked for my ID. He looked at it and said I had permission to be on the farm. One of the other employees was with me and heard him tell me this. On this occasion, too, I had expressly stated that I was performing duties for Royalty Farms.

13.    On or about the evening of August 7, while performing my duties for Royalty Farms, LLC, "Paul" stopped at Barn 1 while I was feeding the mares and babies and said hello. He asked how the babies were doing and we chatted for a moment before he continued checking the farm. He never indicated my being on the farm was a problem.

14.    On August 12, 2014, Robert Slobig, counsel for Royalty Properties, LLC, told me that he had received an e-mail was sent from Christopher Carmichael, attorney for Forest Preserve District, which threatened me with a police action and trespass charges if I were found on the property.

15.    Because I had been given permission to be on the property so many times, I believed the email pertained to the foreclosure matter and not to me as an employee of Royalty Farms, LLC and that I had undisputed right of access to the property to perform my duties and care for the Royalty Farms' horses.

16.    On or about August 13, 2014 6:00 AM, I was arrested by Forest Preserve District police while performing my duties for Royalty Farms, LLC.

17.    The Forest Preserve District police officer put me in handcuffs. He ordered me to enter the rear of a caged police car.

18.    I was then driven to an area on the farm near Sutton Road to wait for a Forest Preserve District Supervisor. After waiting for more than an hour, the Supervisor arrived. I was then removed from the car. The Supervisor began yelling at me and intimidating me. I was told they were taking me to the Maywood police station. While waiting, I called my husband to have him bring my ID. He stayed on the street not entering the property. The Supervisor went to him to look at my ID. My husband spoke with the Supervisor showing him the lease. The Supervisor refused to look at it. My husband was able to persuade him to take me to a more local station.

19.    Initially I was taken to South Barrington Police Station. However, since that station is under construction, I was then taken to Barrington Hills Police Station where I was charged with criminal trespass, fingerprinted, and photographed.

20.    I was extremely humiliated, frightened and embarrassed by the conduct of the Forest Preserve District and its police in arresting me for criminal trespass, handcuffing me, and fingerprinting me without any legal justification – despite the Forest Preserve District's knowledge that I had legal right to be on the property.

3

**SA 10**

FURTHER AFFIANT SAITH NAUGHT

Meryl Squires Cannon

SUBSCRIBED AND SWORN TO
before me this 8th day
of October, 2014

Notary Public

JANICE LEWIS
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
March 04, 2016

4

SA 11

# EXHIBIT G

**From:** christopher.carmichael@hklaw.com
**Sent:** Tuesday, August 12, 2014 1:37 PM
**To:** rslobig@torshen.com
**Subject:** Compliance with Court Orders By the Cannons

Bob,

In the past several weeks, Mr. and Mrs. Cannon have repeatedly entered the Horizon Farms property, stating that there are there to take care of "their horses."

The Cannons cannot enter the property any more, and have no reason to do so, particularly, when you represented to the court that the horses are not theirs.

The Cannons were evicted from the property by two different court orders. Continued trespassing will be addressed by the police.

Please ensure the Cannons do not come onto the property again.

Chris

**SA 13**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MERYL SQUIRES CANNON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | No. 15-cv-6876 |
| | ) | |
| DENNIS WHITE, ERIC HILDEBRANDT, | ) | |
| PATRICK DWYER, CHRISTOPHER | ) | |
| CARMICHAEL, HOLLAND & KNIGHT, LLP, | ) | Judge Kendall |
| THE FOREST PRESERVE DISTRICT OF | ) | |
| COOK COUNTY, ILLINOIS, OFFICER COOPER | ) | |
| and DOES Nos. 1-15, | ) | |
|     Defendants. | ) | |

**NOTICE OF FILING**

To:     All attorneys of record

PLEASE TAKE NOTICE that on April 27, 2016, we filed the attached Withdrawal of Contention, a copy of which is hereby served upon you.

Respectfully submitted,
MERYL SQUIRES-CANNON, Plaintiff,


By:  /s/ Robert J. Slobig
        One of her attorneys

Robert J. Slobig (6183120)
Torshen, Slobig & Axel, Ltd.
33 North Dearborn Street, Suite 1710
Chicago, IL   60602
312-372-9282
rslobig@torshen.com


Certificate of Service

I certify that on April 27, 2016 I caused the foregoing Notice of Filing and the Withdrawal of Contention to be served on all attorneys of record in this cause through the district court's electronic filing system.

      /s/   Robert J. Slobig

**SA 14**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MERYL SQUIRES CANNON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-6876 |
| | ) | |
| DENNIS WHITE, ERIC HILDEBRANDT, | ) | |
| PATRICK DWYER, CHRISTOPHER | ) | |
| CARMICHAEL, HOLLAND & KNIGHT, LLP, | ) | Judge Kendall |
| THE FOREST PRESERVE DISTRICT OF | ) | |
| COOK COUNTY, ILLINOIS, OFFICER COOPER | ) | |
| and DOES Nos. 1-15, | ) | |
| Defendants. | ) | |

## WITHDRAWAL OF CONTENTION

Plaintiff Meryl Squires-Cannon respectfully withdraws from her Motion to Reconsider (docket no. 60, which is pending) and from her Amended Motion to Reconsider (docket no. 64, which the Court ordered stricken on April 1, 2016, *see* docket no. 70) the sentence on page 6 reading, "Meryl received no notice from the District that she was not allowed on Horizon Farms before her arrest."

Respectfully submitted,
MERYL SQUIRES-CANNON, Plaintiff,

By: ___/s/ Robert J. Slobig_____

___/s/ Maria E. Magginas_____
Her attorneys

Robert J. Slobig
Maria E. Magginas
Torshen, Slobig & Axel, Ltd.
33 North Dearborn Street, Suite 1710
Chicago, IL  60602
312-372-9282
rslobig@torshen.com

SA 15